IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>GRACE M. CLAVELL OTERO<br><br>Debtor | CASE NO. 22-00189 (ESL)<br>Chapter 13 |
| GRACE M. CLAVELL OTERO<br><br>Plaintiff<br><br>v.<br><br>ASOCIACIÓN DE RESIDENTES DE LA SERRANÍA, INC.; HIGH-END ADMINISTRATORS INC.<br><br>Defendants | ADV. NO. 23-00005 (ESL)<br><br>WILLFUL VIOLATIONS OF THE AUTOMATIC STAY; VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT; ACTUAL AND PUNITIVE DAMAGES |

<u>OPINION AND ORDER</u>

This case is before the court upon the *Motion for Partial Summary Judgment* (dkt. #57)[1] and the supporting *Statement of Facts* (dkt. #57-1) (the "*Motion for Partial Summary Judgment*") filed by co-defendant High-End Administrators, Inc. ("HEA"), and the *Preliminary Opposition to Motion for Summary Judgment* (dkt. #64) (the "*Opposition*") and *Opposition to Statement of Facts* (dkt. #65) filed by Grace M. Clavell Otero (the "Debtor/Plaintiff"). The court also has under its consideration the *Motion to Stay or, in the Alternative, Requesting an Extension of Time* (dkt. #63) (the "*Motion to Stay*") filed by the Debtor/Plaintiff. Neither the HOA, *infra*, nor HEA filed oppositions to the *Motion to Stay*.

For the reasons discussed below, the *Motion for Partial Summary Judgment* (dkt. #57) is DENIED and the *Opposition* (dkt. #64) is GRANTED. The *Motion to Stay* (dkt. #63) is also DENIED.

---

[1] Unless otherwise stated, all docket entries shall refer to the Adversary Proceeding, *infra*.

-1-

## FACTUAL AND PROCEDURAL BACKGROUND

I.      The Bankruptcy Case, Bankr. Case No. 22-00189

1.      On January 28, 2022, the Debtor/Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code (the "Bankruptcy Case") with the required Schedules (Bankr. Case No. 22-00189, dkt. #1), some of which were subsequently amended (Bankr. Case No. 22-00189, dkts. #14, 21, 36, 55, 104).

2.      "Asoc. Residentes La Serrania" was included as a creditor with a claim secured by a property in Caguas, Puerto Rico, and the following address "La Serrania 1000 Caguas, PR 00725" (Bankr. Case No. 22-00189, dkt. #1, pp. 19, 46).

3.      HEA was not included as a creditor (see, Bankr. Case No. 22-00189, dkts. ##1, 14, 21, 36, 55, 104).

4.      The *Notice of Chapter 13 Bankruptcy Case*, Official Form 309I, was entered on January 29, 2022 (Bankr. Case No. 22-00189, dkt. #3) and notified by mail to "Asoc. Residentes La Serrania" at "La Serrania 1000, Caguas, PR 00725" (Bankr. Case No. 22-00189, dkt. #9).

5.      On August 15, 2023, after various procedural events, the Debtor/Plaintiff filed a *Chapter 13 Plan dated 08/14/2023* (Bankr. Case No. 22-00189, dkt. #107) (the "*Chapter 13 Plan*"), which requested the court to determine that the amount and secured status of the debt attributed to "Asoc. Residentes La Serrania" was $1.00 and $0.00, respectively (see, id., p. 3, item 3.2).

6.      The *Chapter 13 Plan* received a favorable recommendation by the Chapter 13 Trustee on August 30, 2023 (Bankr. Case No. 22-00189, dkt. #108).

7.      The court held a Confirmation Hearing on September 13, 2023, where the *Chapter 13 Plan* (Bankr. Case No. 22-00189, dkt. #107) was confirmed (Bankr. Case No. 22-00189, dkt. #110).

8. An *Order Confirming Plan* was entered on the same date (see, Bankr. Case No. 22-00189, dkt. #111).

9. The *Minutes of the Confirmation Hearing* were notified to "Asoc. Residentes La Serrania" at "La Serrania 1000, Caguas, PR 00725" by first class mail on September 15, 2023, and to counsel for the HOA, *infra*, and counsel for HEA through the court's CM/ECF electronic mail system on September 13, 2023 (Bankr. Case No. 22-00189, dkt. #113).

10. Meanwhile, the *Order Confirming Plan* was notified to, among others, counsel for the HOA, *infra*, and counsel for HEA through the court's CM/ECF electronic mail system on September 13, 2023 (Bankr. Case No. 22-00189, dkt. #114).

II. The Adversary Proceeding, Adv. Proc. No. 23-00005

11. On February 8, 2023, the Debtor/Plaintiff filed an adversary proceeding *Complaint* asserting two (2) causes of action: Count I for alleged willful violations of the automatic stay against Asociación de Residentes de la Serrania Inc. (the "HOA") and Count II for alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, against HEA (the "Adversary Proceeding") (dkt. #1).

12. HEA filed an *Answer to the Complaint* on April 5, 2023 (dkt. #18) denying the allegations against it in the *Complaint* and arguing that it did not know of the Debtor/Plaintiff's ongoing Bankruptcy Case until it was served summons on or around February 14, 2023.

13. The HOA also filed an *Answer to the Complaint* on April 5, 2023 (dkt. #19) denying the allegations against it and any knowledge of the Debtor/Plaintiff's ongoing Bankruptcy Case until they were served summons. Specifically, the HOA argues that all previous notifications were sent to "La Serrania 1000, Caguas, PR 00725", which it avers is an incorrect address. The correct address is "100 La Serranía, Caguas PR 00725" (see, dkt. #19, ¶13).

14. The parties filed a joint *Initial Scheduling Conference Report* on June 13, 2023 (dkt. #21) with a proposed timetable for the management of the case.

15. On June 23, 2023, the court held a Preliminary Pretrial (dkt. #22) where the Debtor/Plaintiff clarified that Count I of the *Complaint* is directed only at the HOA while Count II is directed only at HEA, and the court approved the timetable proposed by the parties in the *Initial Scheduling Conference Report* (dkt. #21). During the hearing, the court scheduled a Status Conference for September 13, 2023, and ordered the parties to file a status report seven (7) days prior to such hearing. The court also raised concerns as to the impact its recent decision in Vicente Arias v. Franklin Credit Management Corp., 2023 WL 1456710 (Bankr. D.P.R. 2023), may have on this case.

16. On September 13, 2023, the court held a Status Conference wherein it granted the parties thirty (30) days to file a settlement agreement or a report on the status of settlement negotiations and stayed discovery pending the filing of the same (dkt. #27).

17. On October 20, 2023, HEA filed a *Motion to Inform Status of Settlement Negotiations* where it notified the court that, although the Debtor/Plaintiff had made a settlement offer and HEA made a counteroffer, they hadn't reached an agreement yet (dkt. #33). In response, the court ordered the parties to file an updated report within forty-five (45) days (dkt. #34).

18. Later, on November 1, 2023, the Debtor/Plaintiff filed a *Motion to Inform in Compliance with Order* notifying the court that she was not able to reach a settlement agreement with neither the HOA nor HEA and requesting that discovery be renewed (dkt. #36).

19. The court held a Status Conference on March 15, 2024, wherein it granted the parties forty-five (45) days to conclude discovery and twenty-one (21) days thereafter to file dispositive motions, if applicable (dkt. #48).

-4-

20. HEA filed the *Motion for Partial Summary Judgment* (dkt. #57), the *Statement of Facts in Support of Motion for Partial Summary Judgment* (dkt. #57-1), and a *Sworn Statement* by Aileen Pabón de González ("Ms. Pabón"), HEA's owner (dkt. #57-2) (the "*Sworn Statement*"), on May 28, 2024.

21. On June 1, 2024, the Debtor/Plaintiff filed the *Motion to Stay* (dkt. #63) asserting that an unrelated case pending before the U.S. Court of Appeals for the First Circuit (the "First Circuit"), Case No. 23-1225 (the "First Circuit Appeal"), addresses the two (2) defenses raised by HEA in the *Motion for Partial Summary Judgment*. Namely, that (i) Plaintiff may not pursue an FDCPA action and is instead limited to an automatic stay action, and that (ii) HEA is exempt from FDCPA liability due to its alleged lack of knowledge of the Bankruptcy Case. The Debtor/Plaintiff requested that the *Motion for Partial Summary Judgement* be held in abeyance until the First Circuit Appeal is resolved and/or adjudicated. In the alternative, the Debtor/Plaintiff requested a seven (7) day extension of time to reply to the *Motion for Partial Summary Judgment*. The District Court decision on appeal before the First Circuit is <u>Hernández Carrasquillo v. CICA Collection Agency, Inc.</u>, 2022 WL 17067655, 2022 U.S. Dist. LEXIS 209811 (D.P.R. 2022).

22. Neither HEA nor the HOA filed oppositions to the *Motion to Stay*.

23. On July 2, 2024, the Debtor/Plaintiff filed the *Preliminary Opposition to Motion for Summary Judgment* (dkt. #64) and *Opposition to Statement of Facts* (dkt. #65). Neither were supplemented.

<u>LEGAL ISSUES</u>

The issues before this court are (i) whether HEA violated Section 1692e of the FDCPA, 15 U.S.C. § 1692e, by making post-petition collection efforts, such as sending a collection letter for unpaid pre-petition homeowners fees, and (ii) whether HEA has the bona fide error defense to its avail.

POSITION OF THE PARTIES

(A)     The HEA

HEA presents three (3) main arguments in the *Motion for Partial Summary Judgment*: (i) that it did not incur in illegal conduct under the FDCPA; (ii) that it did not act with the required intent for an FDCPA violation; and (iii) that it did not violate the automatic stay. HEA argues that it did not learn of the Bankruptcy Case until it was served summons and received a copy of the *Complaint* by mail. HEA alleges that, prior to being served, it sent the Debtor/Plaintiff monthly statements with the unpaid pre-petition balances per the applicable formula, a collection letter dated June 23, 2022, and also sent an email to the HOA's attorney with the Debtor/Plaintiff's unpaid balance so that the HOA's attorney could initiate a state court collection of monies action against the Debtor/Plaintiff on behalf of the HOA as per the HOA's request. Once HEA became aware of the Debtor/Plaintiff's Bankruptcy Case, it argues that it took the necessary measures to comply with the automatic stay including, for example, identifying and segregating pre-petition debt, creating a new account for post-petition fees, and contacting the attorney handling the Collection of Monies Case, *infra*, to request a stay of proceedings. Relying on case law from other districts and on Hernández Carrasquillo, *supra* —the First Circuit Appeal referenced in the *Motion for Stay*— HEA argues that its conduct did not constitute a violation of the FDCPA as it acted without intent because it did not know of the Bankruptcy Case. HEA also argues it has a bona fide error defense under Section 1692k(c) of the FDCPA, 15 U.S.C. §1692k(c).

HEA posits that "remedies under the FDCPA are available in bankruptcy when [d]ebtors have no other remedies for damages under the Bankruptcy Code for the same actions", quoting Román-Pérez v. Operating Partners, 527 B.R. 844, 864 (D.P.R. 2015). To this point, HEA argues that, because it did not know that the Debtor/Plaintiff had filed for bankruptcy, it did not incur in a willful violation of the automatic stay. Lastly, HEA argues that the Debtor/Plaintiff acted in bad

faith by not notifying HEA that she had filed for bankruptcy despite receiving both the monthly statements and the collection letter.

Based on the above, HEA requests the dismissal with prejudice of Count II of the *Complaint*.

(B)    The Debtor/Plaintiff

The Debtor/Plaintiff argues that summary judgment on Count II is not proper because: (i) the Bankruptcy Code does not preclude the FDCPA; (ii) knowledge or intent are not necessary elements to a Section 1692e claim; and (iii) HEA's bona fide error defense fails since it did not identify what procedures it had in place to avoid the actions that gave way to the FDCPA claim, namely sending a collection letter for pre-petition debt after the Debtor/Plaintiff filed the Bankruptcy Case and providing information to the HOA's attorney to commence the Collection of Monies Case, *infra*.

The Debtor/Plaintiff submits that HEA's position regarding preclusion has been widely rejected by courts —although they acknowledge that the First Circuit has not explicitly addressed this matter— and that HEA's argument that it is exempt from liability under the FDCPA because it lacked knowledge and/or intent has also been universally rejected because the FDCPA is a strict liability statute. The Debtor/Plaintiff relies on case law from other circuits to support this last argument.

The Debtor/Plaintiff argues that she notified HEA "on multiple occasions" of the pending Bankruptcy Case before filing the *Complaint*, and that the allegations in the collection letter and the Collection of Monies Case, *infra*, are false and misleading. The Debtor/Plaintiff argues that HEA did not undertake any action to confirm that the debt it was attempting to collect from the Debtor/Plaintiff was valid or accurate, and that it has refused to take corrective action and has continued to prosecute, collectively and jointly with the HOA, a false lawsuit against her.

UNCONTESTED MATERIAL FACTS

In this case, the Debtor/Plaintiff, as the non-movant party, failed to comply with Local Civil Rule 56(c), *infra*, by only affirming, clarifying, and/or denying the HEA's *Statement of Facts* (dkt. #57-1) without supporting its denials or clarifications with a record citation. See, dkt. #65. The court is not required to ferret through the record to find support for blanket denials such as those found in the Debtor/Plaintiff's *Opposition to Statement of Facts* (dkt. #65). Upon Debtor/Plaintiff failure to controvert HEA's proposed material uncontested facts, the HEA's *Statement of Facts* (dkt. #57-1) are admitted as unopposed.

After reviewing the record and HEA's *Statement of Facts* (dkt. #57-1), the court finds that the following material facts are uncontested:

1.      HEA is an entity that computes, invoices and collects homeowners' fees and penalties for non-payment or late payment on behalf of homeowners' associations. See, dkt. #57-1, ¶A; dkt. #57-2, *Sworn Statement,* ¶¶ 2, 3.

2.      HEA provides the aforementioned services to the HOA. See, dkt. #57-1, ¶B; dkt. #57-2, *Sworn Statement,* ¶3; dkt. #65, ¶2.

3.      The Debtor/Plaintiff owns a property located at 161 La Serranía Caguas, PR 00725 (the "Property"). See, dkt. #60-1; Bankr. Case No. 22-00189, dkt. #1, pp. 2, 11.

4.      HEA issues monthly statements of the homeowner fees and any outstanding balances or penalties due to each homeowner at La Serranía by email payable on the 20th day of each month. See, dkt. #57-1, ¶¶D, E; dkt. #57-2, *Sworn Statement,* ¶¶5, 6.

5.      The monthly statements that HEA issues to La Serranía homeowners include the following notice, in the Spanish language: "If you have doubts please call [HEA] at 787-645-4271 or 787-955-9897 or administracion@highendadm.com". Dkt. #57-1, ¶G (uncertified

translation of HEA); dkt. #57-2, *Sworn Statement,* ¶8 (uncertified translation of HEA); dkt. #60-1, pp. 1-11.[2]

6.      Upon receipt of information regarding a bankruptcy filing by a homeowner, HEA identifies the date of filing of the bankruptcy petition and segregates all pre-petition debts accrued (i.e., principal plus all late charges and penalties assessed) from such homeowner's account. Then, HEA creates a new account for said homeowner, which only assesses the monthly homeowner fees and penalties for late or non-payment owed starting the month after the date of filing of the bankruptcy petition. See, dkt. #57-1, ¶H; dkt. #57-2, *Sworn Statement,* ¶9.

7.      The Debtor/Plaintiff filed a Chapter 13 Voluntary Petition on January 28, 2022, and disclosed that she had a pre-petition debt for homeowners' association fees and identified the HOA as a creditor. See, dkt. #1, ¶¶9, 12; dkt. #57-1, ¶I; dkt. #57-2, *Sworn Statement,* ¶10; dkt. #65, ¶¶9, 10, 11; Bankr. Case No. 22-00189, dkt. #1, *Schedule D*, p. 19.

8.      HEA was not included as a creditor in Debtor/Plaintiff's Bankruptcy Case. See, Bankr. Case No. 22-00189, dkt. #1, 14, 21, 36, 55, 104.

9.      After the Debtor/Plaintiff filed for bankruptcy relief, HEA sent monthly statements to the Debtor/Plaintiff which included pre-petition debt. See, dkt. #57-1, ¶Q; dkt. #57-2, *Sworn Statement,* ¶17.

10.     HEA sent a collection letter to Debtor/Plaintiff on or around June 23, 2022, while the Bankruptcy Case was ongoing. See, dkt. #57-1, ¶R; dkt. #57-2, *Sworn Statement,* ¶18; dkt. #65, ¶18.

---

[2] The court notes that the Monthly Statements submitted by HEA are all dated as of March 9, 2023, and it is not clear whether the quoted language was included in statements prior to HEA becoming aware of the Bankruptcy Case.

11. On or about August 2022, HEA sent the HOA's attorney an email with the Debtor/Plaintiff's pre-petition unpaid balance, including penalties. See, dkt. #57-1, ¶S; dkt. #57-2, *Sworn Statement,* ¶19.

12. On October 26, 2022, the HOA filed a civil action against the Debtor/Plaintiff for collection of monies for unpaid homeowners' association fees in the Puerto Rico Court of First Instance, Caguas Part (the "PR Court of First Instance"), Civil Case No. CG2022CV03606 (the "Collection of Monies Case"). See, dkt. #57-1, ¶T; dkt. #57-2, *Sworn Statement,* ¶20; dkt. #65, ¶20.

13. The Debtor/Plaintiff filed the instant Adversary Proceeding on February 8, 2023. See, dkt. #1.

14. The summons and *Complaint* of the Adversary Proceeding were sent by mail to HEA on February 9, 2023. See, dkt. #5, pp. 5-6.

15. HEA received the summons and copy of the *Complaint* on or around February 13 or 14, 2023. See, dkt. #57-1, ¶M; dkt. #57-2, *Sworn Statement,* ¶13.

16. HEA had not received notice of the Bankruptcy Case prior to receiving the summons and the *Complaint* in February 2023. See, dkt. #57-1, ¶¶M-P; dkt. #57-2, *Sworn Statement,* ¶¶13-16.

17. After receiving the summons and the *Complaint*, HEA performed its procedure for when it received notice that a homeowner files for bankruptcy, segregating all pre-petition amounts accrued and creating a new account for the Debtor/Plaintiff that only includes post-petition debt. See, dkt. #57-1, ¶U; dkt. #57-2, *Sworn Statement,* ¶21.

18. On February 23, 2023, that is, ten (10) days after notice of the *Complaint*, the attorney for the HOA requested a stay of the proceedings in the Collection of Monies Case

because the Debtor/Plaintiff filed a bankruptcy petition. See, dkt. #57-1, ¶V; dkt. #57-2, *Sworn Statement,* ¶23.

19. The request for stay was granted by the PR Court of First Instance and a judgment to that effect was entered on February 27, 2023. See, id.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). See, In re Roman-Perez, 527 B.R. 844 (Bankr. D.P.R. 2015). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## APPLICABLE LAW AND ANALYSIS

(A) Summary Judgment Standard under Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, made applicable to adversary proceedings under Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also, Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-332 (1986); In re Colarusso, 382 F.3d 51 (1st Cir. 2004); Alicea v. Wilkie, 2020 WL 1547064, 2020 U.S. Dist. LEXIS 57213 (D.P.R. 2020).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." Charles A. Wright, Arthur R. Miller, & Mary K. Kane, 10A Federal Practice and Procedure § 2712 (4th ed., West 2022). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. (footnotes omitted). "[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court … is empowered [only] to determine whether there are issues to be tried." Id. (footnotes omitted). See

-11-

also, Bernier v. Treasury Dep't (In re Bernier), 2022 WL 17096264, at *5, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) ("the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.").

"A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008), quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996). See also, Andino-Oquendo v. Federal National Mortgage Association, 2023 WL 2245072, at *1, 2023 U.S. Dist. LEXIS 34375, at *2 (D.P.R. 2023), quoting Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. A fact is material only if it is determinative of the outcome of the litigation. See, Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976); Maymí v. P.R. Ports Auth., 515 F. 3d 20, 25 (1st Cir. 2008); In re Financial Oversight and Management Board for Puerto Rico, 650 B.R. 334, 353 (D.P.R. 2023), quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) ("Material facts are those that 'possess[ ] the capacity to sway the outcome of the litigation under the applicable law,' and there is a genuine factual dispute where an issue 'may reasonably be resolved in favor of either party.' ").

When considering a petition for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. See, Thompson, 522 F.3d at 172, citing Franceschi v. United States VA, 514 F.3d 81, 83 (1st Cir. 2008). The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. See, Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991); Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.

See, Bias v. Advantage International, Inc., 905 F.2d 1558, 1560–61 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 958 (1990).

Local Civil Rule 56 requires a party requesting summary judgment to include a separate, short, and concise statement of material facts and to support each factual assertion with a citation to the evidentiary record. See, L. Cv. R. 56(b), (e). "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment," and "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Cv. R. 56(e).

The moving party cannot prevail if any essential element of its claim or defense requires trial. See, López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. See, Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988). In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. See, Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987); Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions, and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. See, Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980). The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. See, Adickes, 398 U.S. at 159.

To this end, Local Rule 56(c) further provides that:

> [a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

L. Cv. R. 56(c).

Unless the non-moving party controverts the moving party's statement of uncontested material facts, all the material facts set forth therein shall be deemed to be admitted. See, Cosme-Rosado v. Rosado-Figueroa, 360 F.3d 42 (1st Cir. 2004). This is the so-called "anti-ferret rule." See, e.g., Orbi, S.A. v. Calvesbert & Brown, 20 F. Supp. 2d 289, 291 (D.P.R. 1998).

(B)      The Bankruptcy Code and the FDCPA

The main purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors". See, 15 U.S.C. § 1692(e). To this end, Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt", including but not limited to the "false representation of … the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)), "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken" (15 U.S.C. § 1692e(5)), and using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (15 U.S.C. § 1692e(10)).

Debt collectors who fail to comply with the provisions of the FDCPA are liable for (1) any actual damages sustained by such person as a result of such failure; (2) additional damages, up to $1,000.00; and (3) the costs of the action, together with a reasonable attorney's fee as determined

by the court, in the case of any successful action to enforce the foregoing liability. 15 U.S.C. § 1692k(a)(1)-(3). In this case, the Debtor/Plaintiff seeks an award of statutory damages pursuant to 15 U.S.C. § 1692k, and an award of costs and attorney fees pursuant to 15 U.S.C. § 1692k.

Circuits are split on the question of whether the Bankruptcy Code precludes the FDCPA. The Second and the Ninth Circuits have broadly ruled that it does. See, *e.g.*, Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2nd Cir. 2010) (holding that the Bankruptcy Code "provides remedies for wrongfully filed proofs of claim", and "the filing a proof of claim in bankruptcy court cannot form the basis for an FDCPA claim"); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 510 (9th Cir. 2002) (holding that FDCPA claims were precluded by the Bankruptcy Code because the later provided the exclusive remedy for violation of a discharge injunction, which cannot form the basis for an FDCPA claim); B–Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225 (9th Cir. BAP 2008) (holding that FDCPA claims were precluded by the Bankruptcy Code because the filing of a proof of claim cannot be the basis for an FDCPA claim). The Third and the Seventh Circuits have ruled to the contrary, finding that the FDCPA and the Bankruptcy Code may peacefully co-exist, allowing FDCPA claims in cases involving debtors that were in bankruptcy. See, e.g., Simon v. FIA Card Services, N.A., 732 F.3d 259, 271 (3rd Cir.2013) (holding that an FDCPA remedy was not precluded by the Bankruptcy Code); Randolph v. IMBS, Inc., 368 F.3d 726, 730, 732 (7th Cir. 2004) (holding that the Bankruptcy Code "does not work an implied repeal" of an FDCPA remedy, and stating that the Bankruptcy Code and the FDCPA "do not ... add up to irreconcilable conflict; instead the two statutes overlap.... It is easy to enforce both statutes, and any debt collector can comply with both simultaneously").

Bankruptcy Courts within our First Circuit have held that the filing of a bankruptcy petition *does not* negate the protections of the FDCPA. See, e.g., In re Román-Pérez, 527 B.R. 844, 864-865 (Bankr. D.P.R. 2015) (holding that the "remedies under the FDCPA are available in

bankruptcy when Debtors have no other remedies for damages under the Bankruptcy Code for the same actions"); Martel v. LVNV Funding, LLC, 539 B.R. 192, 198 (Bankr. D. Me. 2015) (holding that "[t]he [Bankruptcy] Code and the FDCPA are not irreconcilable and creditors are under the obligation to follow both."); In re Vazquez, 2021 WL 3278049, at *7, 2021 Bankr. LEXIS 2035, at *23 ("[t]he filing of a bankruptcy petition does not negate the protections of the FDCPA."). See also, Resto-Feliciano v. DLJ Mortg. Cap., Inc., 2020 WL 7496421, at * 6, 2020 U.S. Dist. LEXIS 240073, at * 17 (D.P.R. 2020) (noting that "bankruptcy courts within the First Circuit have held that the FDCPA and the bankruptcy code are coexistent rather than mutually exclusive" and denying motion for withdrawal of reference premised on lack of jurisdiction with respect to FDCPA causes of action). In addition, this court recently found and held in Vicente Arias v. Franklin Credit Management Corp. (In re Arias), 2023 WL 1456710 (Bankr. D.P.R. 2023), that the Bankruptcy Code does not preclude an FDCPA claim arising from false and misleading communications, and not based on a violation of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

In the case at hand, the Debtor/Plaintiff brought forth two (2) claims. The first claim — which is not the object of this *Opinion and Order*— is against the HOA for willful violations of the automatic stay arising from the HOA's alleged continued collection efforts against the Debtor/Plaintiff by instructing and causing HEA to send post-petition debt collection letters and pursuing the Collection of Monies Case. See, dkt. #1, ¶¶41, 42. The second claim —which is the object of this *Opinion and Order*— is against HEA for violations of the FDCPA. Per the uncontested facts, HEA issued a post-petition collection letter to the Debtor/Plaintiff which included allegedly false representations and provided information to the HOA's attorney for the

post-petition filing of the Collection of Monies Case.[3] See, dkt. #1, ¶¶58-60, 62-64; Uncontested Facts No. 10 and 11.

This court has held that the allegations that form the basis of a Bankruptcy Code violation claim cannot also form the basis for an FDCPA violation claim, and that allowing remedies under both statutes for the same facts would allow plaintiffs "to obtain damages from two different sources for the same violation." In re Roman-Perez, 527 B.R. at 864–65. However, in Roman-Perez, the allegations under both statutes were against *the same defendant*. In the captioned case, as previously summarized, the allegations against the HOA and the HEA are under different statutes and for different actions. Specifically, the Debtor/Plaintiff only included causes of action against HEA under the FDCPA for sending the collection letter and providing information to the HOA's attorney to commence the Collection of Monies Case. The alleged violation of the automatic stay by the HOA is not the basis for the alleged FDCPA violation against HEA. Count I, the automatic stay violation, arises from the HOA's filing of the post-petition Collection of Monies Case and the continuing of post-petition collection efforts against the Debtor/Plaintiff. The alleged FDCPA violation of the HEA survives without the automatic stay violation because it is not premised on the same facts. Thus, the Bankruptcy Code does not preclude the Debtor/Plaintiff's cause of action under the FDCPA against HEA, which is premised on their issuing of a collection letter after the Debtor/Plaintiff had filed the Bankruptcy Case and while it was pending. No automatic stay violation claim is alleged against HEA or the HOA on account of the post-petition collection letter.

---

[3] At this juncture, it is important to note that the party that filed the Collection of Monies Case against the Debtor/Plaintiff is the HOA (Asociación de Residentes de la Serranía, Inc.), and not HEA. See, Asociación de Residentes de la Serranía, Inc. v. Grace M. Clavell and José Vicens Piñero, Civil Case No. CG2022CV03606. HEA is neither a party to the Collection of Monies Case nor a creditor. Instead, HEA is a debt collector that was engaged by the HOA for the non-judicial collection of the amounts owed. From the record, the HEA did not pursue the judicial collection of such amounts.

(C)      Knowledge and Intent by Debt Collectors in Violations of the FDCPA

"In order to prevail on an FDCPA claim, plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA." In re Roman-Perez, 527 B.R. at 862, citing Som v. Daniels Law Offices, 573 F.Supp.2d 349, 356 (D. Mass. 2008). See also, In re Vazquez, 2021 WL 3278049, at *7, 2021 Bankr. LEXIS 2035, at *23 (Bankr. D.P.R. 2021), citing Torres Melendez v. Collazo Connelly & Surillo, LLC (In re Torres Melendez), 2020 WL 557320, at *3, 2020 Bankr. LEXIS 297, at *9 (Bankr. D.P.R. 2020).

A debt collector "may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error". 15 U.S.C. § 1692k(c). This is known as the bona fide error defense. When evaluating the language of this provision, courts in our First Circuit have found that "an error is 'bona fide' if 'it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake'." Gathuru v. Credit Control Servs., Inc., 623 F. Supp. 2d 113, 122 (D. Mass. 2009), quoting Kort v. Diversified Collection Servs., 394 F.3d 530, 538 (7th Cir. 2005). Furthermore, when interpreting this provision, the U.S. Supreme Court has explained that

> [t]he dictionary defines 'procedure' as 'a series of steps followed in a regular orderly definite way.' Webster's Third New International Dictionary 1807 (1976). In that light, the statutory phrase is more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day, §1692c(a)(1), or make false representations as to the amount of a debt, §1692e(2)…

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 587 (2010).

The First Circuit has not opined on the bona fide error defense. However, other circuits have expressed that there are three (3) requirements for this defense to be available to a debt collector. First, the alleged violation must be unintentional; second, the alleged violation must result from a bona fide error; and third, the bona fide error must have occurred despite procedures designed to avoid such errors. See, Beck v. Maximus, 457 F.3d 291, 297–98 (3rd Cir. 2006); Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006) ("after intent, the procedures part of the defense involves a two-step inquiry: "first, whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue."); LaRocque ex rel. Spang v. TRS Recovery Servs., Inc., 285 F.R.D. 139, 157 (D.Me. 2012). Furthermore, the U.S. District Court for the District of Puerto Rico (the "District Court") has adopted other circuits' view that the bona fide error defense is an objective test that involves the maintenance of procedures that are reasonably adapted to avoid the specific error at issue. See, Natal-Olivo v. Boss Collection Serv., Inc., 2014 WL 183894, at *4 (D.P.R. 2014), citing McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011); Johnson v. Riddle, 443 F.3d at 729; Kort v. Diversified Collection Services, 394 F.3d at 539.

While the bona fide error defense provides a potential shield for debt collectors who maintain adequate procedures to prevent violations to the FDCPA, courts in the First Circuit have emphasized that the FDCPA is a strict liability statute and debt collectors are held accountable regardless of intent. See, e.g., Espinosa v. Metcalf, 2022 WL 16554726, at *5 (D. Mass. 2022); Lannan v. Levy & White, 186 F. Supp. 3d 77, 91 (D. Mass. 2016); Alicea v. Mitsubishi Motor Sales of Caribbean, 2013 WL 3973381, at *2 (D.P.R. 2013); McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 54 (D. Mass. 2012), amended in part, 969 F. Supp. 2d 74 (D. Mass. 2013), aff'd in part, rev'd in part and remanded on other grounds, 775 F.3d 109 (1st Cir.

2014); In re Almodovar, 2011 WL 381742, at *2 (Bankr. D.P.R. 2011); Harrington v. CACV of Colo., LLC, 508 F.Supp.2d 128, 132 (D. Mass. 2007); Pettway v. Harmon Law Offices, P.C., 2005 WL 2365331 *3, 2005 U.S. Dist. LEXIS 21341 *10–11 (D. Mass. 2005). Under the language of the bona fide error defense, 15 U.S.C. §1692k(c), even unintentional violations are actionable if the defendant failed to maintain procedures reasonably adapted to avoid such error. See, In re Jackson, 545 B.R. 62, 71 (Bankr. D. Mass. 2016), aff'd, 2017 WL 3822869 (B.A.P. 1st Cir. 2017), aff'd, 988 F.3d 583 (1st Cir. 2021); Harrington, 508 F.Supp.2d at 132–33.

Notwithstanding the foregoing, our District Court has held that there cannot be liability under Section 1692e of the FDCPA that is premised on a violation of the automatic stay if the debt collector lacked notice of the bankruptcy case. See, Hernández Carrasquillo, 2022 WL 17067655, 2022 U.S. Dist. LEXIS 209811. In so holding, the District Court found that a debt collector did not violate the FDCPA by issuing a collection letter to a consumer debtor under the protection of the Bankruptcy Code prior to having knowledge of such consumer debtor's bankruptcy filing. See, id. In Hernández Carrasquillo, the consumer debtor argued that the letter violated three subparts of Section 1692e because: the letter itself was mailed; the letter indicated that the debt was due and payable; and the letter indicated that the creditor for whom the debt collector provided debt-collection services was within its legal rights to commence a lawsuit against the consumer debtor. The consumer debtor contended that the forgoing was a false, deceptive, or misleading representation because he was protected by the bankruptcy filing at the time. The debt collector admitted to issuing a post-petition collection letter and argued that it lacked knowledge and intent because they did not receive notice of the consumer debtor's bankruptcy filing from the debtor or from the creditor for whom it provided debt-collection services. Relying on Third Circuit

precedent,[4] and without a discussion on the bona fide error defense or acknowledging that the FDCPA is a strict liability statute, the District Court found and held that 15 U.S.C. §1692e requires actual knowledge and dismissed the consumer debtor's FDCPA claims with prejudice. Hernández Carrasquillo was appealed and is pending adjudication before the First Circuit.[5]

(D)     Discussion

In this case, it is undisputed that the Debtor/Plaintiff is a "consumer" and HEA is a "debt collector", as these terms are defined under the FDCPA. There is also no dispute that HEA sent the Debtor/Plaintiff a post-petition collection letter on behalf of the HOA (see, Uncontested Fact No. 10) or the contents of said collection letter. It is also undisputed that the HEA was not included as a creditor in Debtor/Plaintiff's bankruptcy schedules. See, Uncontested Fact No. 8. And, it is undisputed that HEA did not receive notice of the Bankruptcy Case prior to being served summons and a copy of the *Complaint* in February 2023. See, Uncontested Fact No. 16. Although the Debtor/Plaintiff alleges that "on multiple occasions, prior to the filing of this lawsuit, Plaintiff contacted [HEA] to notify them that the [collection letter] and the [Collection of Monies Case] was (sic) false and misleading" (see, dkt. #64, p. 5, ¶21), she presented no support for this contention.

The parties disagree on whether HEA's actions are a violation of the FDCPA. The Debtor/Plaintiff argues that HEA violated Section 1692e of the FDCPA when it (i) sent the post-petition letter on behalf of the HOA and (ii) sent information to the HOA's attorney for the commencement of the Collection of Monies Case. The HEA argues that the foregoing was an unintentional violation because it was not aware of the bankruptcy filing, and

---

[4] See, Hubbard v. National Bond and Collection Associated, Inc., 126 B.R. 442 (D. Del 1991), *aff'd*, 947 F.2d 935 (3rd Cir. 1991).
[5] Appeal Case No. 23-1225 pending before the First Circuit.

-21-

"a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such error." 15 U.S.C. § 1692k(c). The Debtor/Plaintiff submits that HEA does not meet the requirements of the bona fide error defense.

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt". 15 U.S.C. §1692e. In the *Complaint*, the Debtor/Plaintiff argues that HEA violated Section 1692e when it sent her a post-petition collection letter and sent information to the HOA's attorney to commence the Collection of Monies Case against the Debtor/Plaintiff to collect on a claim that was barred by her ongoing Bankruptcy Case. To this point, "[a] demand for payment while a debtor is in bankruptcy … is 'false' in the sense that it asserts that money is due, although, because of the automatic stay … it is not." See, Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1332 (M.D. Fla. 2010), quoting Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004). HEA does not deny the allegations against it and, instead, argues that it did not know about the Bankruptcy Case at the time.

To determine whether HEA is liable under Section 1692e of the FDCPA, we must evaluate HEA's bona fide error defense under Section 1692k of the FDCPA. In so doing, this court must consider whether: (1) the alleged violation was unintentional; (2) the alleged violation resulted from a bona fide error; and (3) the bona fide error occurred despite procedures designed and put in place by HEA to avoid such errors. See, 15 U.S.C. § 1692k(c). The court finds that HEA did not know of the Bankruptcy Case when it sent the collection letter, and that HEA's violation of 15 U.S.C. §1692e was unintentional and the result of a bona fide error. However, the court further finds that HEA does not meet the third prong of the bona fide error defense test as it did not show that it had procedures in place to avoid the specific error that led to this violation of the FDCPA. HEA referred only to the procedures it followed upon learning of the Bankruptcy Case *after* being

-22-

served in the adversary proceeding. In support thereof, HEA submits the *Sworn Statement* outlining the procedures to follow upon receipt of information regarding a bankruptcy filing by a homeowner. See, Uncontested Fact No. 6; dkt. #57-2, p. 2, ¶9. As part of these procedures, HEA identifies the date in which the bankruptcy petition was filed and segregates all pre-petition debts accrued from said homeowner's account. See, id. Then, HEA creates a new account for said owner which only assesses the monthly HOA fees owed starting the month after the date of filing of the bankruptcy petition. See, id. These procedures, HEA contends, ensure that pre-petition debt balances are not included in a debtor's post-petition statements. See, dkt. #57-2, p. 3, ¶9. HEA followed these procedures once they received notice of the *Complaint* and summons. See, Uncontested Fact No. 17; dkt. #57-2, p. 5, ¶21. HEA did not provide a written copy of this procedure. HEA also did not explain or provide copies of any other procedures that it maintains as relevant to this case, including procedures to confirm and/or verify whether a homeowner or consumer debtor they are collecting from has filed for bankruptcy and is protected by the automatic stay or the discharge injunction, or a written agreement whereby creditor-clients must notify HEA of homeowners who have filed for bankruptcy relief.

Considering the above, this court finds that HEA failed to plead a bona fide error defense by offering no evidence in support of the third prong of its defense. HEA did not provide evidence to the effect that it maintains a procedure to confirm or verify whether a consumer debtor it has been tasked with collecting from has filed for bankruptcy relief. The procedures mentioned in the *Sworn Statement* do not address this specific error. It is aimed at avoiding collection efforts of pre-petition debt *after* HEA is notified that the homeowner filed for bankruptcy, which is not the error that gave place to the controversy under the court's consideration.

(E)      The Motion for Stay

Also under our consideration is the *Motion to Stay* requesting that this case be stayed pending the appeal of Hernández Carrasquillo v. CICA Collection Agency, Inc., 2022 WL 17067655, 2022 U.S. Dist. LEXIS 209811 (D.P.R. 2022) before the First Circuit's consideration. There is no relationship between this case and Hernández Carrasquillo aside from the legal question on appeal: whether a debt collector is exempt from FDCPA liability because it lacked knowledge of the debtor's underlying bankruptcy case. This court did not follow Hernández Carrasquillo when evaluating the merits of the instant case. Instead, this court addressed the bona fide error defense raised by HEA.

"Generally, courts have the discretionary power to stay an action in the interest of justice and efficiency". Rivera v. Puerto Rico Telephone Co., 2009 WL 3160839, *1 (D.P.R. 2009), citing Hewlett–Packard Company v. Berg, 61 F.3d 101 (1st Cir.1995); Taunton Garden Company v. Hills, 557 F.2d 877, 879 (1st Cir. 1979). However, a court should only grant a stay in rare circumstances. See, Landis v. North American Co., 299 U.S. 248, 255 (1936). The party requesting the stay must show that they will suffer hardship if the stay is not granted. See, id.; Austin v. Unarco Indus., Inc., 705 F.2d 1, 5 (1st Cir.1983) ("to be entitled to a stay, a party must demonstrate a clear case of hardship[ ]"). When evaluating requests for stay, courts must look at the duration of the stay requested as immoderate or indefinite stays may be considered an abuse of discretion. See, *e.g.*, Landis, 299 U.S. at 254-255.

In this case, the *Motion for Stay* requests the case be stayed until the First Circuit enters a decision in Hernández Carrasquillo, that is, it seeks an indefinite stay. The court takes judicial notice of the First Circuit Appeal, Case No. 23-1225, under Fed. R. Evid. 201, and notes that the appeal was filed on March 9, 2023, deemed submitted following the filing of the appropriate briefs, and there has been no activity since April 2024. The court also notes there has been no activity in

the instant case since July 2024 when the Debtor/Plaintiff filed the *Opposition* and the *Motion to Stay*. Accordingly, because the *Motion for Stay* fails to demonstrate a clear case of hardship and seeks an indefinite stay on account of on an undecided and unrelated case on appeal, the court finds that a stay is unwarranted. Thus, the *Motion for Stay* is DENIED.

CONCLUSION

For the reasons discussed herein, the *Preliminary Opposition to Motion for Summary Judgment* (dkt. #64) is GRANTED and, consequently, the *Motion for Partial Summary Judgment* (dkt. #57) is DENIED.

Further, the *Motion to Stay or, in the Alternative, Requesting an Extension of Time* (dkt. #63) is DENIED.

An evidentiary hearing is scheduled for June 23, 2025, at 10:00 a.m. The parties shall file proposed findings of fact and conclusions of law seven (7) days prior to the hearing. Each finding of fact shall make reference to either a document to be submitted as an exhibit or to a witness.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 25th day of March 2025.

Enrique S. Lamoutte
United States Bankruptcy Judge

-25-