IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>GRACE M. CLAVELL OTERO<br><br>Debtor | CASE NO. 22-00189 (ESL)<br><br>CHAPTER 13 |
| GRACE M. CLAVELL OTERO<br><br>Plaintiff<br><br>v.<br><br>ASOCIACIÓN DE RESIDENTES DE LA SERRANÍA, INC.; HIGH-END ADMINISTRATORS INC.<br><br>Defendants | ADV. NO. 23-00005 (ESL) |

**OPINION AND ORDER**

This case is before the court to determine the validity of Count II of the *Complaint* filed by Debtor/Plaintiff against High-End Administrators Inc. ("**HEA**"). For the reasons discussed herein, Count II of the *Complaint* is dismissed *sua sponte* for failure to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6).

Introduction

The First Circuit has cautioned that "*[s]ua sponte* dismissals are strong medicine, and should be dispensed sparingly". Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002), quoting Gonzalez–Gonzalez v. United States, 257 F.3d 31, 33 (1st Cir. 2001) (internal quotation marks omitted, italics added). Notwithstanding, the First Circuit has recognized that such dismissals are appropriate in limited circumstances, including where the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond, or where "it is crystal clear that the plaintiff cannot prevail and … amending the complaint would be futile". Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001). As will be explained below, the facts support the *sua sponte* dismissal of Count II.

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). See In re Roman-Perez, 527 B.R. 844 (Bankr. D.P.R. 2015). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

Legal Issue

The issue before the court is whether dismissal under Fed. R. Civ. P. 12(b)(6) is warranted for failure to state a claim for which relief may be granted.

Factual and Procedural Background

1. On January 28, 2022, the Debtor/Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code (the "**Bankruptcy Case**") together with the corresponding Schedules (Bankr. Case No. 22-00189, dkt. #1), as thereafter amended (dkt. #14, 21, 36, 55, 104).

2. "Asoc. Residentes La Serrania" (the "**HOA**") was included in *Scheduled D* as a secured creditor (Bankr. Case No. 22-00189, dkt. #1, p. 19, item 2.1, and p. 46). The HEA was not included as a creditor (Bankr. Case No. 22-00189, dkt. #1, 14, 21, 3, 55, 104).

3. On January 29, 2022, a *Notice of Chapter 13 Bankruptcy Case* was sent to the HOA by mail to "La Serrania 1000, Caguas, PR 00725" (Bankr. Case No. 22-00189, dkt. #3, 9).

4. On February 8, 2023, the Debtor/Plaintiff filed an adversary proceeding *Complaint* (dkt. #1) asserting alleged willful violations of the automatic stay against the HOA (Count I), and alleged violations of the Fair Debt Collection Practices Act (the "**FDCPA**"), 15 U.S.C. § 1692 *et seq.*, against the HEA (Count II). The Debtor/Plaintiff alleges that HEA violated the FDCPA by (i) issuing a collection letter dated August 23, 2022, demanding payment of a pre-petition consumer debt (the "**August 23 Collection Letter**", dkt. #1, ¶¶ 23-26, 59-60, 63), and (ii) instructing and causing the filing of a debt collection action against Debtor/Plaintiff in the Puerto Rico Court of First Instance on October 25, 2022 (the "**Collection of Monies Case**", dkt. #1, ¶¶ 27, 61-63).

5. On September 13, 2023, the Chapter 13 Plan was confirmed. See Bankr. Case No. 22-00189, dkt. #107, 110, 111.

6. On April 5, 2023, the HEA filed an *Answer to the Complaint* (dkt. #18) denying the allegations against it in the *Complaint* and arguing that it did not know of the Bankruptcy Case until it was served summons on or around February 14, 2023.

7. Also on April 5, 2023, the HOA also filed an *Answer to the Complaint* (dkt. #19) denying the allegations against it and any knowledge of the Bankruptcy Case until they were served summons, averring that all previous notifications were sent to an incorrect address (id., ¶ 13).

8. On June 13, 2023, the parties filed a joint *Initial Scheduling Conference Report* (dkt. #21), which was approved on June 23, 2023 (dkt. #22). The report stipulates "the deadline for the joinder of parties or to amend pleadings" as October 31, 2023 (dkt. #21, ¶ 4), and "the deadline to file dispositive motions" as February 29, 2024 (id., ¶ 5). The dispositive motions deadline was subsequently extended to May 20, 2024 (dkt. #48).

9. On May 28, 2024, HEA filed a *Motion for Partial Summary Judgment* (dkt. #57), a *Statement of Facts in Support of Motion for Partial Summary Judgment* (dkt. #57-1), and a *Sworn Statement* by Aileen Pabón de González, HEA's owner (dkt. #57-2), to which the Debtor/Plaintiff filed a *Preliminary Opposition to Motion for Summary Judgment* (the "**Opposition to Summary Judgment**", dkt. #64) and an *Opposition to Statement of Facts* (dkt. #65) on July 2, 2024.

10. On March 25, 2025, the court entered an *Opinion and Order* (dkt. #68) wherein it considered (i) whether the HEA violated Section 1692e of the FDCPA, 15 U.S.C. § 1692e, by making post-petition collection efforts, such as sending a collection letter for unpaid pre-petition homeowners fees, and (ii) whether HEA has the bona fide error defense to its avail under the summary judgment standard of Fed. R. Civ. P. 56. Ultimately, summary judgment was found to not be appropriate because although the court found that the HEA did not know of the Bankruptcy Case when it issued the August 23 Collection Letter and, consequently, its violation of 15 U.S.C. §1692e was unintentional, the HEA failed to plead a bona fide error defense. In so finding, the

court denied HEA's *Motion for Partial Summary Judgment*, set an evidentiary hearing and ordered the parties to file proposed findings of fact and conclusions of law.

11.     On July 1, 2025, the Debtor/Plaintiff and HEA filed a *Motion in Compliance With Order Re, Proposed Findings of Fact and Conclusions of Law per Opinion and Order at #68* (dkt. #79). See also *Plaintiff's Motion Submitting Evidence for Eviden[t]iary Hearing*, dkt. #80; HEA's *Motion Submitting Documents Re, Documents for 7/28/25 Evidentiary Hearing*, dkt. #81.

12.     On July 28, 2025, the court held an evidentiary hearing (the "**July 28 Hearing**") wherein the parties stipulated the admissibility of the documents to be presented. With respect to the documents submitted in support of the parties' positions, the court "stated that it would only consider those documents for which an English translation had been filed", and "to the extent there had not been a request to amend the complaint, and some of the documents presented allege separate FDCPA claim violations, the court would not accept those documents." *Minutes,* dkt. #83, pp. 2-3, lines 21-2. The court clarified that the *Opinion and Order* denying summary judgment was predicated on HEA's bona fide error defense, not on any determination that HEA lacked knowledge or did not receive proper notice. Ultimately, the court ordered the Debtor/Plaintiff to submit a written response to inquiries made in open court, and further ordered the HEA to file a reply thereto. The evidentiary hearing was held in abeyance pending the parties' response to the court's inquiries.

13.     On September 3, 2025, the court ordered the Debtor/Plaintiff to show cause why the case should not be dismissed for failure to comply with the minute order at dkt. #83. See dkt. #91.

14.     On September 17, 2025, the Debtor/Plaintiff filed a *Motion in Compliance with Orders at Docket Entries No. 83 and No. 91* (the "**Motion in Compliance**", dkt. #93).

15.     On November 5, 2025, HEA filed a *Response to [Motion in Compliance]* (dkt. #104).

16.     The Debtor/Plaintiff and the HOA reached a settlement agreement with respect to Count I. See *Motion for Entry of Order Approving Settlement Agreement*, dkt. #106; *Order Approving Settlement/Stipulation*, dkt. #107; *Partial Judgment*, dkt. #108

Applicable Law and Discussion

(A)     Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings through Fed. R. Bankr. P. 7012. In deciding a motion under Fed. R. Civ. P. 12(b)(6), the court must determine whether a complaint states a plausible claim. "The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." In re Instituto Medico del Norte, Inc., 2021 WL 4944085, at *2, 2021 Bankr. LEXIS 2924, at *7 (Bankr. D.P.R. 2021); Lugo Alejandro v. Betancourt (In re Betancourt), 2021 WL 438858, 2021 Bankr. LEXIS 298 (Bankr. D.P.R. 2021); Vélez Arcay v. Banco Santander de P.R. (In re Vélez Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." Ashcroft, 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id., at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011). See also Banco Santander P.R. v. P.R. Hosp. Supply, Inc. (In re P.R. Hosp. Supply, Inc.), 617 B.R. 181, 191 (Bankr. D.P.R. 2020).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. See Pérez v. Rivera (In re Pérez), 2013 WL 1405747, at *3, 2013 Bankr. LEXIS 1561 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

As noted above, "*[s]ua sponte* dismissals are strong medicine, and should be dispensed sparingly." Chute, 281 F.3d at 319, quoting Gonzalez–Gonzalez, 257 F.3d at 33 (internal marks omitted, italics added). The general rule is that "in limited circumstances, *sua sponte* dismissals of complaints under Rule 12(b)(6) ... are appropriate," but that "such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond." Id., quoting Futura Dev. of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 13–14 (1st Cir. 1998) (italics added). "This does not mean ... that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile,

then a *sua sponte* dismissal may stand." Id., quoting Gonzalez–Gonzalez, 257 F.3d at 37 (italics added). The party defending the dismissal must show that "the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption." Id., quoting Gonzalez–Gonzalez, 257 F.3d at 37 (internal marks omitted). Consequently, the court may dismiss a complaint *sua sponte* for failure to state a claim where a plaintiff cannot prevail on the facts alleged in the complaint, plaintiff has been afforded notice and an opportunity to amend the complaint or otherwise respond, and dismissal promotes the efficient use of judicial resources. See, *e.g.*, Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 22 (1st Cir. 2014); Chute, 281 F.3d at 319. See also 27A Fed. Proc., L. Ed. § 62:456 (2026).

(B)     Discussion

In its *Opinion and Order* of March 25, 2025 (dkt. #68), this court considered (i) whether the HEA violated Section 1692e of the FDCPA, 15 U.S.C. § 1692e, by making post-petition collection efforts, such as sending a collection letter for unpaid pre-petition homeowners fees, and (ii) whether HEA had the bona fide error defense to its avail under the summary judgment standard of Fed. R. Civ. P. 56. Ultimately, summary judgment was found to not be appropriate. In so finding, the court analyzed the applicable law as follows:

(B) The Bankruptcy Code and the FDCPA

The main purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors". See, 15 U.S.C. § 1692(e). To this end, Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt", including but not limited to the "false representation of ... the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)), "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken" (15 U.S.C. § 1692e(5)), and using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (15 U.S.C. § 1692e(10)).

Debt collectors who fail to comply with the provisions of the FDCPA are liable for (1) any actual damages sustained by such person as a result of such failure; (2) additional damages, up to $1,000.00; and (3) the costs of the action, together with

a reasonable attorney's fee as determined by the court, in the case of any successful action to enforce the foregoing liability. 15 U.S.C. § 1692k(a)(1)-(3). In this case, the Debtor/Plaintiff seeks an award of statutory damages pursuant to 15 U.S.C. § 1692k, and an award of costs and attorney fees pursuant to 15 U.S.C. § 1692k.

Circuits are split on the question of whether the Bankruptcy Code precludes the FDCPA. The Second and the Ninth Circuits have broadly ruled that it does. See, e.g., Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2nd Cir. 2010) (holding that the Bankruptcy Code "provides remedies for wrongfully filed proofs of claim", and "the filing a proof of claim in bankruptcy court cannot form the basis for an FDCPA claim"); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 510 (9th Cir. 2002) (holding that FDCPA claims were precluded by the Bankruptcy Code because the later provided the exclusive remedy for violation of a discharge injunction, which cannot form the basis for an FDCPA claim); B–Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225 (9th Cir. BAP 2008) (holding that FDCPA claims were precluded by the Bankruptcy Code because the filing of a proof of claim cannot be the basis for an FDCPA claim). The Third and the Seventh Circuits have ruled to the contrary, finding that the FDCPA and the Bankruptcy Code may peacefully co-exist, allowing FDCPA claims in cases involving debtors that were in bankruptcy. See, e.g., Simon v. FIA Card Services, N.A., 732 F.3d 259, 271 (3rd Cir.2013) (holding that an FDCPA remedy was not precluded by the Bankruptcy Code); Randolph v. IMBS, Inc., 368 F.3d 726, 730, 732 (7th Cir. 2004) (holding that the Bankruptcy Code "does not work an implied repeal" of an FDCPA remedy, and stating that the Bankruptcy Code and the FDCPA "do not ... add up to irreconcilable conflict; instead the two statutes overlap.... It is easy to enforce both statutes, and any debt collector can comply with both simultaneously").

Bankruptcy Courts within our First Circuit have held that the filing of a bankruptcy petition *does not* negate the protections of the FDCPA. See, e.g., In re Román-Pérez, 527 B.R. 844, 864-865 (Bankr. D.P.R. 2015) (holding that the "remedies under the FDCPA are available in bankruptcy when Debtors have no other remedies for damages under the Bankruptcy Code for the same actions"); Martel v. LVNV Funding, LLC, 539 B.R. 192, 198 (Bankr. D. Me. 2015) (holding that "[t]he [Bankruptcy] Code and the FDCPA are not irreconcilable and creditors are under the obligation to follow both."); In re Vazquez, 2021 WL 3278049, at *7, 2021 Bankr. LEXIS 2035, at *23 ("[t]he filing of a bankruptcy petition does not negate the protections of the FDCPA."). See also, Resto-Feliciano v. DLJ Mortg. Cap., Inc., 2020 WL 7496421, at * 6, 2020 U.S. Dist. LEXIS 240073, at * 17 (D.P.R. 2020) (noting that "bankruptcy courts within the First Circuit have held that the FDCPA and the bankruptcy code are coexistent rather than mutually exclusive" and denying motion for withdrawal of reference premised on lack of jurisdiction with respect to FDCPA causes of action). In addition, this court recently found and held in Vicente Arias v. Franklin Credit Management Corp. (In re Arias), 2023 WL 1456710 (Bankr. D.P.R. 2023), that the Bankruptcy Code does not preclude an FDCPA claim arising from false and misleading communications, and not based on a violation of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

In the case at hand, the Debtor/Plaintiff brought forth two (2) claims. The first claim — which is not the object of this *Opinion and Order*— is against the HOA for willful violations of the automatic stay arising from the HOA's alleged continued collection efforts against the Debtor/Plaintiff by instructing and causing HEA to send post-petition debt collection letters and pursuing the Collection of Monies Case. See, dkt. #1, ¶¶41, 42. The second claim —which is the object of this *Opinion and Order*— is against HEA for violations of the FDCPA. Per the uncontested facts, HEA issued a post-petition collection letter to the Debtor/Plaintiff which included allegedly false representations and provided information to the HOA's attorney for the post-petition filing of the Collection of Monies Case.[3] See, dkt. #1, ¶¶58-60, 62-64; Uncontested Facts No. 10 and 11.

This court has held that the allegations that form the basis of a Bankruptcy Code violation claim cannot also form the basis for an FDCPA violation claim, and that allowing remedies under both statutes for the same facts would allow plaintiffs "to obtain damages from two different sources for the same violation." In re Roman-Perez, 527 B.R. at 864–65. However, in Roman-Perez, the allegations under both statutes were against *the same defendant*. In the captioned case, as previously summarized, the allegations against the HOA and the HEA are under different statutes and for different actions. Specifically, the Debtor/Plaintiff only included causes of action against HEA under the FDCPA for sending the collection letter and providing information to the HOA's attorney to commence the Collection of Monies Case. The alleged violation of the automatic stay by the HOA is not the basis for the alleged FDCPA violation against HEA. Count I, the automatic stay violation, arises from the HOA's filing of the post-petition Collection of Monies Case and the continuing of post-petition collection efforts against the Debtor/Plaintiff. The alleged FDCPA violation of the HEA survives without the automatic stay violation because it is not premised on the same facts. Thus, the Bankruptcy Code does not preclude the Debtor/Plaintiff's cause of action under the FDCPA against HEA, which is premised on their issuing of a collection letter after the Debtor/Plaintiff had filed the Bankruptcy Case and while it was pending. No automatic stay violation claim is alleged against HEA or the HOA on account of the post-petition collection letter.

(C) Knowledge and Intent by Debt Collectors in Violations of the FDCPA

"In order to prevail on an FDCPA claim, plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA." In re Roman-Perez, 527 B.R. at 862, citing Som v. Daniels Law Offices, 573 F.Supp.2d 349, 356 (D. Mass. 2008). See also, In re Vazquez, 2021 WL 3278049, at *7, 2021 Bankr. LEXIS 2035, at *23 (Bankr. D.P.R. 2021), citing Torres Melendez v. Collazo Connelly & Surillo, LLC (In re Torres Melendez), 2020 WL 557320, at *3, 2020 Bankr. LEXIS 297, at *9 (Bankr. D.P.R. 2020).

A debt collector "may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error". 15 U.S.C. § 1692k(c). This is known as the bona fide error defense. When evaluating the language of this provision, courts in our First Circuit have found that "an error is 'bona fide' if 'it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake'." Gathuru v. Credit Control Servs., Inc., 623 F. Supp. 2d 113, 122 (D. Mass. 2009), quoting Kort v. Diversified Collection Servs., 394 F.3d 530, 538 (7th Cir. 2005). Furthermore, when interpreting this provision, the U.S. Supreme Court has explained that

> [t]he dictionary defines 'procedure' as 'a series of steps followed in a regular orderly definite way.' Webster's Third New International Dictionary 1807 (1976). In that light, the statutory phrase is more naturally read to apply to processes that have mechanical or other such 'regular orderly' steps to avoid mistakes—for instance, the kind of internal controls a debt collector might adopt to ensure its employees do not communicate with consumers at the wrong time of day, § 1692c(a)(1), or make false representations as to the amount of a debt, § 1692e(2)...

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 587, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010).

The First Circuit has not opined on the bona fide error defense. However, other circuits have expressed that there are three (3) requirements for this defense to be available to a debt collector. First, the alleged violation must be unintentional; second, the alleged violation must result from a bona fide error; and third, the bona fide error must have occurred despite procedures designed to avoid such errors. See, Beck v. Maximus, 457 F.3d 291, 297–98 (3rd Cir. 2006); Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006) ("after intent, the procedures part of the defense involves a two-step inquiry: "first, whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue."); LaRocque ex rel. Spang v. TRS Recovery Servs., Inc., 285 F.R.D. 139, 157 (D.Me. 2012). Furthermore, the U.S. District Court for the District of Puerto Rico (the "District Court") has adopted other circuits' view that the bona fide error defense is an objective test that involves the maintenance of procedures that are reasonably adapted to avoid the specific error at issue. See, Natal-Olivo v. Boss Collection Serv., Inc., 2014 WL 183894, at *4 (D.P.R. 2014), citing McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011); Johnson v. Riddle, 443 F.3d at 729; Kort v. Diversified Collection Services, 394 F.3d at 539.

While the bona fide error defense provides a potential shield for debt collectors who maintain adequate procedures to prevent violations to the FDCPA, courts in the

First Circuit have emphasized that the FDCPA is a strict liability statute and debt collectors are held accountable regardless of intent. See, *e.g.*, Espinosa v. Metcalf, 2022 WL 16554726, at \*5 (D. Mass. 2022); Lannan v. Levy & White, 186 F. Supp. 3d 77, 91 (D. Mass. 2016); Alicea v. Mitsubishi Motor Sales of Caribbean, 2013 WL 3973381, at \*2 (D.P.R. 2013); McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 54 (D. Mass. 2012), *amended in part*, 969 F. Supp. 2d 74 (D. Mass. 2013), *aff'd in part, rev'd in part and remanded on other grounds*, 775 F.3d 109 (1st Cir. 2014); In re Almodovar, 2011 WL 381742, at \*2 (Bankr. D.P.R. 2011); Harrington v. CACV of Colo., LLC, 508 F.Supp.2d 128, 132 (D. Mass. 2007); Pettway v. Harmon Law Offices, P.C., 2005 WL 2365331 \*3, 2005 U.S. Dist. LEXIS 21341 \*10–11 (D. Mass. 2005). Under the language of the bona fide error defense, 15 U.S.C. § 1692k(c), even unintentional violations are actionable if the defendant failed to maintain procedures reasonably adapted to avoid such error. See, In re Jackson, 545 B.R. 62, 71 (Bankr. D. Mass. 2016), *aff'd*, 2017 WL 3822869 (B.A.P. 1st Cir. 2017), *aff'd*, 988 F.3d 583 (1st Cir. 2021); Harrington, 508 F.Supp.2d at 132–33.

Notwithstanding the foregoing, our District Court has held that there cannot be liability under Section 1692e of the FDCPA that is premised on a violation of the automatic stay if the debt collector lacked notice of the bankruptcy case. See, Hernández Carrasquillo, 2022 WL 17067655, 2022 U.S. Dist. LEXIS 209811. In so holding, the District Court found that a debt collector did not violate the FDCPA by issuing a collection letter to a consumer debtor under the protection of the Bankruptcy Code prior to having knowledge of such consumer debtor's bankruptcy filing. See, id. In Hernández Carrasquillo, the consumer debtor argued that the letter violated three subparts of Section 1692e because: the letter itself was mailed; the letter indicated that the debt was due and payable; and the letter indicated that the creditor for whom the debt collector provided debt-collection services was within its legal rights to commence a lawsuit against the consumer debtor. The consumer debtor contended that the forgoing was a false, deceptive, or misleading representation because he was protected by the bankruptcy filing at the time. The debt collector admitted to issuing a post-petition collection letter and argued that it lacked knowledge and intent because they did not receive notice of the consumer debtor's bankruptcy filing from the debtor or from the creditor for whom it provided debt-collection services. Relying on Third Circuit precedent,[4] and without a discussion on the bona fide error defense or acknowledging that the FDCPA is a strict liability statute, the District Court found and held that 15 U.S.C. § 1692e requires actual knowledge and dismissed the consumer debtor's FDCPA claims with prejudice. Hernández Carrasquillo was appealed and is pending adjudication before the First Circuit.[5]

In re Otero, 2025 WL 916866, at \*7–11 (Bankr. D.P.R. Mar. 25, 2025) (footnotes omitted).

Applying the foregoing to the undisputed facts, the court held as follows:

-11-

(D) <u>Discussion</u>

In this case, it is undisputed that the Debtor/Plaintiff is a "consumer" and HEA is a "debt collector", as these terms are defined under the FDCPA. There is also no dispute that HEA sent the Debtor/Plaintiff a post-petition collection letter on behalf of the HOA (<u>see</u>, Uncontested Fact No. 10) or the contents of said collection letter. It is also undisputed that the HEA was not included as a creditor in Debtor/Plaintiff's bankruptcy schedules. <u>See</u>, Uncontested Fact No. 8. And, it is undisputed that HEA did not receive notice of the Bankruptcy Case prior to being served summons and a copy of the Complaint in February 2023. <u>See</u>, Uncontested Fact No. 16. Although the Debtor/Plaintiff alleges that "on multiple occasions, prior to the filing of this lawsuit, Plaintiff contacted [HEA] to notify them that the [collection letter] and the [Collection of Monies Case] was (sic) false and misleading" (<u>see</u>, dkt. #64, p. 5, ¶21), she presented no support for this contention. The parties disagree on whether HEA's actions are a violation of the FDCPA. The Debtor/Plaintiff argues that HEA violated Section 1692e of the FDCPA when it (i) sent the post-petition letter on behalf of the HOA and (ii) sent information to the HOA's attorney for the commencement of the Collection of Monies Case. The HEA argues that the foregoing was an unintentional violation because it was not aware of the bankruptcy filing, and "a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such error." 15 U.S.C. § 1692k(c). The Debtor/Plaintiff submits that HEA does not meet the requirements of the bona fide error defense.

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt". 15 U.S.C. § 1692e. In the Complaint, the Debtor/Plaintiff argues that HEA violated Section 1692e when it sent her a post-petition collection letter and sent information to the HOA's attorney to commence the Collection of Monies Case against the Debtor/Plaintiff to collect on a claim that was barred by her ongoing Bankruptcy Case. To this point, "[a] demand for payment while a debtor is in bankruptcy ... is 'false' in the sense that it asserts that money is due, although, because of the automatic stay ... it is not." <u>See</u>, <u>Bacelli v. MFP, Inc.</u>, 729 F. Supp. 2d 1328, 1332 (M.D. Fla. 2010), quoting <u>Randolph v. IMBS, Inc.</u>, 368 F.3d 726, 728 (7th Cir. 2004). HEA does not deny the allegations against it and, instead, argues that it did not know about the Bankruptcy Case at the time.

To determine whether HEA is liable under Section 1692e of the FDCPA, we must evaluate HEA's bona fide error defense under Section 1692k of the FDCPA. In so doing, this court must consider whether: (1) the alleged violation was unintentional; (2) the alleged violation resulted from a bona fide error; and (3) the bona fide error occurred despite procedures designed and put in place by HEA to avoid such errors. <u>See</u>, 15 U.S.C. § 1692k(c). The court finds that HEA did not know of the Bankruptcy Case when it sent the collection letter, and that HEA's violation of 15 U.S.C. § 1692e was unintentional and the result of a bona fide error. However, the court further finds that HEA does not meet the third prong of the bona fide error defense test as it did not show that it had procedures in place to avoid the specific

error that led to this violation of the FDCPA. HEA referred only to the procedures it followed upon learning of the Bankruptcy Case *after* being served in the adversary proceeding. In support thereof, HEA submits the *Sworn Statement* outlining the procedures to follow upon receipt of information regarding a bankruptcy filing by a homeowner. See, Uncontested Fact No. 6; dkt. #57-2, p. 2, ¶9. As part of these procedures, HEA identifies the date in which the bankruptcy petition was filed and segregates all pre-petition debts accrued from said homeowner's account. See, id. Then, HEA creates a new account for said owner which only assesses the monthly HOA fees owed starting the month after the date of filing of the bankruptcy petition. See, id. These procedures, HEA contends, ensure that pre-petition debt balances are not included in a debtor's post-petition statements. See, dkt. #57-2, p. 3, ¶9. HEA followed these procedures once they received notice of the Complaint and summons. See, Uncontested Fact No. 17; dkt. #57-2, p. 5, ¶21. HEA did not provide a written copy of this procedure. HEA also did not explain or provide copies of any other procedures that it maintains as relevant to this case, including procedures to confirm and/or verify whether a homeowner or consumer debtor they are collecting from has filed for bankruptcy and is protected by the automatic stay or the discharge injunction, or a written agreement whereby creditor-clients must notify HEA of homeowners who have filed for bankruptcy relief.

Considering the above, this court finds that HEA failed to plead a bona fide error defense by offering no evidence in support of the third prong of its defense. HEA did not provide evidence to the effect that it maintains a procedure to confirm or verify whether a consumer debtor it has been tasked with collecting from has filed for bankruptcy relief. The procedures mentioned in the *Sworn Statement* do not address this specific error. It is aimed at avoiding collection efforts of pre-petition debt *after* HEA is notified that the homeowner filed for bankruptcy, which is not the error that gave place to the controversy under the court's consideration.

… For the reasons discussed herein, the *Preliminary Opposition to Motion for Summary Judgment* (dkt. #64) is GRANTED and, consequently, the *Motion for Partial Summary Judgment* (dkt. #57) is DENIED.

In re Otero, 2025 WL 916866, at *11-12 (emphasis original).

Thereafter, at the July 28 Hearing, the court clarified that its denial of summary judgment "was based on HEA's allegation of unintentional action due to a bona fide error, and not on lack of knowledge or due notice" (dkt. #86, p. 4, lines 5-6), and ordered the parties to respond to the following inquiries: (i) what is the factual basis for the alleged FDCPA violation, including whether the claim was premised on (a) the amounts not being owed or (b) the amounts were in fact owed but could not be collected; (ii) whether the Debtor/Plaintiff would have an FDCPA claim absent the bankruptcy filing, observing that the complaint does not allege that the amounts

-13-

were not owed and noting the distinction between a debt not being owed and a valid debt not being collectable due to the automatic stay; and (iii) whether it had jurisdiction. See *Minutes,* dkt. #83.

In its *Motion in Compliance*, the Debtor/Plaintiff avers that the court has "related to" jurisdiction because any damages recovered under the FDCPA would benefit the bankruptcy estate, citing In re Roman-Perez, 527 B.R. 844, 854 (Bankr. D.P.R. 2015). The Debtor/Plaintiff addresses the remainder of the court's inquiries as follows:

**2) An FDCPA Claim is Not Precluded by the Bankruptcy Code:**
… the concern voiced by the Court … namely, whether Plaintiff could sustain an FDCPA claim absent the bankruptcy filing, and whether the allegations required a showing that the debt was not in fact mathematically correct or owed—has already been legally addressed … the Court itself, in its … Opinion and Order at Docket No. 68, addressed the very concerns now raised regarding the potential overlap between the FDCPA and the Bankruptcy Code. The Court did not dismiss Plaintiff's claim on preclusion grounds; rather, it engaged with the merits, accepted HEA's own factual admissions as uncontested, and proceeded to analyze the availability of the bona fide error defense. In so doing, the Court necessarily recognized that Plaintiff's FDCPA allegations were legally cognizable. We herein respectfully assert that, as of today, the factual panorama is the same and this Honorable Court's ruling is still equally unveiling … Plaintiff reiterates that an FDCPA claim is not precluded by the Bankruptcy Code.

… While the First Circuit has not yet directly decided the issue in the precise context of postpetition collection activity, bankruptcy courts within this Circuit, particularly this one, has held that the FDCPA and the Bankruptcy Code are not mutually exclusive.

… the Bankruptcy Code does not preclude FDCPA claims, even where the alleged conduct also implicates the automatic stay. If any concern could exist, it would only arise where a plaintiff asserts, on the basis of the very same facts, both an automatic stay violation and an FDCPA violation against the same defendant. That is not the case here.

… the Court inquired whether the Debtor could maintain an FDCPA claim if no bankruptcy had been filed. Respectfully, however, this Honorable caselaw makes clear that what is safeguarded is the avoidance of duplicative damages. Put differently, the proper standard is whether the bankruptcy filing may give rise to an FDCPA action against a party who has not been accused of violating the automatic stay. The answer is yes. Hence, for the aforementioned reasons, an FDCPA claim is not precluded by the Bankruptcy Code. Accordingly, even if HEA could show that the amounts tried to collect are correct, even then HEA collection efforts would

be precluded by the FDCPA. Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1332 (M.D. Fla. 2010). … Plaintiff assert[s] that her cause of action against HEA is not precluded and her day in court would help to resolve any pending matter including HEA's lack of affirmative defences[sic] on the merits.

**3) The Issue of Knowledge and the Objective Nature of FDCPA Liability:**

… the related issue of knowledge and/or intent, raised by HEA and noted by the Court at the hearing, but which this Honorable Court has already clarified is not dispositive under § 1692e. At the evidentiary hearing, Counsel for HEA stated that the alleged falsity of the communications arises only from Debtor's bankruptcy filing, and that at no time did HEA have knowledge of the bankruptcy case. See, Docket No. 83, p. 3. Referencing the FDCPA's strict liability statute, Counsel for HEA stated that it was the Debtor's responsibility to notify HEA of its bankruptcy filing, rather than requiring HEA to review each account monthly. This assertion is not only incorrect but also immaterial for the case at hand. First, Plaintiff has sustained in her Complaint having notified HEA directly of the Bankruptcy Case, a matter pending adjudication. See, Docket No. 1, p. 8 ¶ 29. Second, as will be reiterated the FDCPA is a strict liability statute in which knowledge is not a dispositive element. Third, this Honourable[sic] Court has already determined not to exempt HEA of liability due to its alleged ignorance of Plaintiff's Bankruptcy Petition.

… although HEA raised these arguments in the evidentiary hearing held in abeyance, this matter is not presently in controversy. This Honorable Court has been more than clear that, despite HEA's repeated attempts to invoke lack of knowledge, the Court has not excused HEA from liability on that basis. The Court has consistently limited the issues to whether HEA may prevail under the bona fide error doctrine.

… this Honorable Court has determined that whether HEA did or did not have knowledge is not dispositive for purposes of liability. Nevertheless, out of an abundance of caution, Plaintiff maintains that she has consistently alleged and sustained that HEA in fact had knowledge of the bankruptcy filing. The Complaint explicitly states: "To resolve this matter without court intervention, on multiple occasions, prior to the filing of this lawsuit, Plaintiff contacted HighEnd to notify them that the August 23 Debt Collection Letter and the October 25, 2022 Lawsuit was false and misleading." (emphasis ours). See, Docket No. 1, p. 8, ¶ 29. Thus, although Plaintiff maintains that lack of knowledge is not a dispositive defense under the FDCPA—as confirmed by this Court's own prior rulings—if the Court were to view the matter otherwise, Plaintiff must still be afforded her day in court to present testimony and evidence on this point.

… any determination excusing HEA from liability on the basis of lack of knowledge would not only contradict the current state of these proceedings, but also run counter to governing law. The prevailing weight of authority—including the majority of circuits and multiple courts within the First Circuit—has consistently recognized the strict liability nature of the statute. 4 However, this

issue has not been conclusively resolved within our Circuit. Accordingly, Plaintiff has repeatedly emphasized that this very issue is currently before the First Circuit in the Hernández Carrasquillo appeal. 5 For that reason, Plaintiff twice requested that this case be stayed pending resolution of that appeal, and both requests were denied by this Honorable Court. See, Docket Nos. 63, 68, 85, and 89. The Court's rationale for denying those requests was that it was not considering Hernández Carrasquillo when evaluating the merits of the instant case. See, Docket No. 68, p. 24. Thus, by the Court's own reasoning, the merits of this case are to be evaluated independently of Hernández Carrasquillo. See, Docket No. 68, p. 24. Respectfully, that determination leaves no room for HEA to be excused from liability on the basis of lack of knowledge. The only remaining issue for adjudication is whether HEA can establish the elements of a bona fide error defense—a question that must be resolved at the evidentiary hearing.

In sum, the issue of knowledge has already been squarely addressed by this Court and cannot serve as a dispositive defense to FDCPA liability. Even if it were otherwise, Plaintiff has adequately alleged and stands ready to prove that HEA had notice of the bankruptcy filing. Given the strict liability framework of § 1692e, and the overwhelming weight of authority confirming that knowledge is not an element of the statute, any contrary determination would be inconsistent with both this Court's prior rulings and the governing law. Accordingly, the matter should proceed to evidentiary hearing so that the bona fide error defense—the only issue properly before the Court—may be adjudicated on its merits.

dkt. #93, pp. 12-20.

In its *Response to [Motion in Compliance]* (dkt. #104), the HEA avers that "HEA cannot deceive or abuse Plaintiff through collecting a debt that would be payable and collectable but for Plaintiff's bankruptcy filing—a filing of which HEA was unaware", that "the lynchpin of Plaintiff's FDCPA claim against HEA is her filing of a bankruptcy petition" (id., ¶ 8), and "even if a debt collector sends a letter about a pre-petition debt, that in itself is not dispositive of an FDCPA § 1692e claim" (id., ¶ 9). "HEA contends that actual knowledge of Plaintiff's bankruptcy filing, and her deliberate efforts to hide such filing from HEA, are not only pertinent but dispositive. To that end, any possible violation of the FDCPA was the direct result of Plaintiff's own acts and omissions—especially considering the FDCPA does not require debt collectors to assess the validity of the debt prior to sending a collection letter. Hence, HEA joins Plaintiff's request for the evidentiary hearing to prove its lack of liability, including (but not limited to) the application of its bona fide error defense" (id., ¶ 12).

-16-

The parties having had due notice and an opportunity to respond, the court concludes that Count II fails to state a plausible claim for which relief may be granted. Although "related to" jurisdiction exists because any recovery would augment the bankruptcy estate, the dispositive issue is the nature of the alleged FDCPA violation. As clarified at the July 28 Hearing and in the Debtor/Plaintiff's *Motion in Compliance*, the purported FDCPA violation claim is alleged as false or misleading not because the underlying debt is not owed, but solely because the Bankruptcy Case and the automatic stay rendered the debt temporarily uncollectible. Accordingly, any determination of the HEA's liability under the FDCPA necessarily requires consideration of the Bankruptcy Case and the effect of the automatic stay on post-petition collection activity. Consequently, absent the Bankruptcy Case and the protections afforded by 11 U.S.C. § 362, the August 23 Collection Letter (and HEA's liability with respect to the filing of the Collection of Monies Case, if any) would not be false or misleading under the theory advanced by the Debtor/Plaintiff, and no FDCPA violation claim would exist. See In re Roman-Perez, 527 B.R. at 864–865 ("[W]ithout the violation of the automatic stay, the Plaintiffs would not have an FDCPA claim. Hence, allowing such FDCPA remedies in addition to those in 11 U.S.C. § 362(k) would allow Plaintiffs to obtain damages from two different sources for the same violation."). The court's conclusion has nothing to do with claim preclusion, and everything to do with the FDCPA's reason for being. See id., at 862, quoting Simmons, 622 F.3d at 96 ("The FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors. There is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself.") (quote corrected). Because the alleged misconduct derives entirely from rights created by the Bankruptcy Code, which already supplies a comprehensive remedial scheme through 11 U.S.C. § 362(k), Count II fails to state a claim for which relief may be granted.

The court further concludes that amendment of the *Complaint* would be futile. The deficiency of Count II is not the omission of additional factual allegations but the legal premise on which the claim rests. As clarified at the July 28 Hearing and in the Debtor/Plaintiff's *Motion*

-17-

*in Compliance*, the alleged FDCPA violation exists solely because of the pendency of the Bankruptcy Case and the protections afforded by the automatic stay. No additional factual allegations could transform that theory into a cognizable FDCPA claim. The deadline stipulated by the parties for amendment of the *Complaint* and for the filing of dispositive motions having expired, and the parties having had notice and an opportunity to address the court's concerns, the court finds that amendment would serve no purpose. Under these circumstances, the interests of judicial economy and the efficient administration of this proceeding favor the *sua sponte* dismissal of Count II.

Conclusion

For the reasons discussed herein, Count II of the *Complaint* is dismissed for failure to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6).

A separate judgment will be entered.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of July 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge